J-S44007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HECTOR G. GONZALES, | |
| Appellant | No. 3690 EDA 2015 |

Appeal from the Judgment of Sentence Entered July 31, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013380-2013

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HECTOR G. GONZALES, | |
| Appellant | No. 3691 EDA 2015 |

Appeal from the Judgment of Sentence Entered July 31, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013381-2013

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED NOVEMBER 21, 2017**

Appellant, Hector G. Gonzales, appeals from the judgment of sentence of an aggregate term of 21 to 42 years' incarceration, imposed after he was convicted, in two separate cases, of various crimes including attempted rape

by forcible compulsion and unlawful restraint.[1]  Appellant challenges the discretionary aspects of his sentence, as well as the sufficiency and weight of the evidence to sustain his convictions.  After careful review, we find no merit to those claims.  However, we *sua sponte* determine that the portion of the court's July 31, 2015 sentencing order that deems Appellant a Sexually Violent Predator (SVP) under the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10-9799.41, is illegal. Therefore, we vacate in part, affirm in part, and remand for further proceedings.

The trial court summarized the facts of Appellant's case, as follows:

> At trial, the Commonwealth of Pennsylvania established that [Appellant] initially accosted two females, [C.Q.] and [M.R.], who were strangers to him, as they walked through a park near 3rd & Cumberland Streets in Philadelphia on July 1, 2013, around 11 p.m.[2]  Specifically, [C.Q.] testified that she received a phone call earlier from her friend [M.R.] asking to meet for a night out at a local pub.  [M.R.] stopped at [C.Q.'s] house and waited downstairs.  [C.Q.] further testified that she witnessed [M.R.] ingest two Xanax pills, which were prescribed to her.  These two friends walked to a bar in the neighborhood, where they each drank a shot and a beer.  When these two females later passed the bar, a male on a bike approached them along North Fourth Street.  [C.Q.] unequivocally identified this male in the courtroom as [Appellant].  She explained that [Appellant] kept following them as they walked through the

---

[1] On December 28, 2015, this Court issued a *per curiam* order that *sua sponte* consolidated Appellant's appeals in each of his two cases.

[2] To protect the privacy of the victims in this case, we have changed their names to initials.

- 2 -

park. He offered a cigarette, to which [C.Q.] quickly replied[,] "no, and get away."

[C.Q.] testified [that Appellant] stated that he was "trying to have fun," and repeatedly suggested that he and they engage in a "threesome," and made repeated foul mouthed sexual requests. [Appellant] ignored the women's entreaties to leave them alone and their clear statements that they were not interested in his crude sexual advances. [C.Q.] informed him that they were not interested in the attention of any males. [Appellant] then became aggressive with her friend, [M.R.], and began touching her on her hands and breast.

[Appellant] continued to badger both women, "talking dirty," and stating that he wanted to have a three-way orgy. [Appellant] walked up to [C.Q.], grabbed her shoulder, [and] felt her breast. She immediately pushed him away. [C.Q.] stated to leave [M.R.] alone because she was messed up because of the Xanax and alcohol. She clearly voiced to him that he should leave the area entirely and go to where the prostitutes were available. [C.Q.] started walking away, towards the bar, to alert her friends to help them. When [C.Q.] returned with her friends, she witnessed [Appellant], with his pants down, pounding [his body] on top of [M.R.] as she lay on the ground struggling and yelling to fend him off of her. [C.Q.] and her two friends "O" and "Black" started pulling [Appellant] off of [M.R.]; [Appellant's] underwear was down to his ankles. [M.R.'s] pants had been pulled down her legs and her underwear [was] ripped. She was hysterical.

[M.R.'s] testimony at trial strongly corroborated her friend's recollection of events that evening. [M.R.] testified that when [C.Q.] walked away to meet their friends, [Appellant] jumped on top of her and pulled [her] to the ground in a park area. She testified that [Appellant] pulled out his penis, and attempted to insert his penis in her mouth and tried to go in her pants. [M.R.] testified that she had a few drinks that night, as well as her prescribed Xanax, and had subsequent difficulties with her memory, but that those circumstances did not prohibit her from recalling material facts as she recalled events of that night.

[M.R.] also testified that [Appellant], while his hands were in her pants, ripped her underwear and pulled them down to her ankles. She clearly recalled flailing her arms to try to stop him

- 3 -

and yelling. When her friends returned they pulled [Appellant] off of her as she struggled on the ground. [Appellant] ran down an alley way [*sic*] naked, with [C.Q.] friends in hot pursuit. When [Appellant] entered a house, multiple people called police reporting a naked man sitting on the steps of a home in the 2600 block of Orianna Street.

Philadelphia Police Officer Jason Judge credibly testified to responding to a radio call that dispatched him to the area of 3rd and Cumberland Streets in Philadelphia. Upon arrival[,] he was approached by two upset women who had excitedly reported that [Appellant] approached them and attempted to sexually assault them after [they had] rebuffed … his unwanted advances. They and other person[s] directed the responding officers toward the 2600 block of Orianna Street as the path of [Appellant's] flight.

Police Officer Judge testified that the complainant, [M.R.], told him that a male, who was a complete stranger to her[,] sexually assaulted her by attempting to penetrate her vagina, and that she had tried to fight him. She told him that the male then attempted to place his penis in her mouth. Officer Judge further testified that [M.R.'s] clothes were disheveled, ripped and torn, and that she appeared to be visibly distraught.

Philadelphia Police Officer Cyprian Scott, of the Philadelphia Police SWAT Team, testified that he and his team were called to a report of a male barricaded inside 2628 North Orianna Street, Philadelphia, PA[], which was located a block and one-half from the reported sexual assault location. Officer Scott further testified that upon arriving at the house, he was informed that the male inside had been chased by citizens after committing a sexual assault. The male inside, later identified as [Appellant], rebuffed requests by SWAT members to peaceably exit the property for three hours before the SWAT team made forcible entry into the property. Officer Scott stated that orders were given to break through the front door.

Once inside the residential property, officers cleared the first floor and heard [Appellant] moving upstairs in a second floor bedroom. [Appellant] yelled to the officers that he would … come down the stairs as long as his dog was unharmed. Per direction, [Appellant] placed the pit bull terrier into a second floor bedroom where [the dog] remained unharmed. [Appellant]

- 4 -

was finally subdued and arrested after positive identifications were made from the victims.

Trial Court Opinion (TCO), 11/16/16, at 4-7 (citations to the record omitted).

Appellant was charged with various offenses stemming from the above-stated facts, and he proceeded to a jury trial in March of 2015. On March 19, 2015, the jury convicted him of attempted rape by forcible compulsion, 18 Pa.C.S. §§ 901, 3121(a)(1); attempted involuntary deviate sexual intercourse by forcible compulsion, 18 Pa.C.S. §§ 901, 3123(a)(1); unlawful restraint - serious bodily injury, 18 Pa.C.S. § 2902(a)(1); indecent exposure, 18 Pa.C.S. § 3127(a); and indecent assault by forcible compulsion, 18 Pa.C.S. § 3126(a)(2). Following the preparation of a presentence report and mental health evaluation, a combined sentencing and sexually violent predator (SVP) hearing was conducted on July 31, 2015. At the conclusion thereof, the court imposed an aggregate sentence of 21 to 42 years' incarceration, and determined that Appellant is an SVP.

Appellant filed a timely post-sentence motion which was denied on December 4, 2015. Appellant then filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents three issues for our review:

I. Whether [Appellant's] sentence was manifestly excessive[?]

II. Whether the evidence was sufficient as a matter of law to convict [Appellant] of criminal attempt - rape by forcible compulsion…[?]

III. Whether the verdict was against the weight of the evidence[?]

Appellant's Brief at 8.

Appellant's first issue is a challenge to the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra, supra*** at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

- 6 -

Here, Appellant filed a timely notice of appeal, he preserved his sentencing challenge in a post-sentence motion, and he has presented a Rule 2119(f) statement in his appellate brief. Thus, we must determine if he has raised a substantial question for our review. In his Rule 2119(f) statement, Appellant argues that,

> [t]he aggregate sentence of twenty-one (21) to forty-two (42) years of imprisonment imposed by the sentencing judge is manifestly excessive. The sentence is manifestly excessive[] because it constitutes too severe a punishment and is grossly disproportionate to the crimes, particularly in light of the facts surrounding the criminal episode. Moreover, the sentencing judge did not expressly or implicitly consider the general standards applicable to sentencing found in 42 Pa.C.S. § 9721, *i.e.*, the protection of the public; the gravity of the offense in relation to the impact on the victim and the community; and the rehabilitative needs of [Appellant]. Based on the forgoing, [Appellant's] sentence is "clearly unreasonable."

Appellant's Brief at 15 (internal citations omitted).

While Appellant presents relatively boilerplate claims in his Rule 2119(f) statement, we will nevertheless consider his assertions as constituting substantial questions for our review. *See Commonwealth v. Derry*, 150 A.3d 987, 992 (Pa. Super. 2016) ("An averment that 'the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense and the rehabilitative needs of [the a]ppellant, as 42 Pa.C.S.[] § 9721(b) requires[,]' presents a substantial question for our review in typical cases.") (citations omitted); *Commonwealth v. Malovich*, 903 A.2d 1247, 1253 (Pa. Super. 2006)

("[C]laims that a penalty is excessive and/or disproportionate to the offense can raise substantial questions.").

However, we conclude that Appellant's substantive arguments are meritless. Essentially, he claims that the court focused on only his criminal history and the gravity of his offenses, and ignored other factors such as his learning disability, low I.Q., and rehabilitative needs. According to Appellant, the court did not impose an individualized sentence, and the aggregate term fashioned by the court was "clearly unreasonable." Appellant's Brief at 18.[3]

In rejecting Appellant's sentencing challenge, the trial court initially concluded that he had failed to present a substantial question for our review. For the reasons stated *supra*, we disagree. However, the court went on to provide an alternative analysis of the merits of Appellant's claims, finding his arguments unpersuasive. **See** TCO at 10-17. Having reviewed the court's thorough and well-reasoned analysis in this regard, we conclude that it adequately addresses the arguments Appellant presents on appeal. Accordingly, we adopt that portion of the trial court's assessment of Appellant's sentencing claim as our own, **see id.**, and we deem his first issue meritless for the reasons set forth therein.

---

[3] Appellant also avers that the court failed to state adequate reasons for the sentence it imposed. However, we will not review this claim, as it was not presented in Appellant's Rule 2119(f) statement.

Likewise, the trial court provides an accurate analysis of Appellant's remaining two issues, in which he challenges the sufficiency and weight of the evidence to sustain his convictions. ***See id.*** at 17-20. We conclude that the court's discussion disposes of the arguments Appellant raises herein.[4] Therefore, we also adopt that portion of the trial court's decision as our own, and reject Appellant's second and third issues on the grounds set forth therein.

However, we are compelled to *sua sponte* vacate an illegal aspect of Appellant's sentence, namely, the portion of the sentencing order deeming him an SVP. ***See Commonwealth v. Butler***, No. 1225 WDA 2016, *6 (Pa. Super. filed Oct. 31, 2017) (concluding that the issue discussed, *infra*,

---

[4] However, we add a brief note to the trial court's analysis of Appellant's challenge to the sufficiency of the evidence to support his conviction of attempted rape. In his brief to this Court, Appellant focuses his sufficiency argument on contending that "[t]here was no testimony that [his] penis was ever near [the victim's] vagina." Appellant's Brief at 20. However, C.Q. testified that when she saw Appellant on top of M.R., "it looked like he was trying to put his penis inside her vagina." N.T. Trial, 3/18/15, at 46. C.Q. also testified that M.R. was on her back with Appellant on top of her, and his pants and underwear were down to his ankles. ***Id.*** M.R.'s pants were down to her knees and her underwear was ripped. ***Id.*** While Appellant acknowledges C.Q.'s testimony, he claims it was insufficient to support his rape conviction because the victim, M.R., did not ***herself*** testify that Appellant "was trying to force his penis inside of her." Appellant's Brief at 21. We disagree. C.Q.'s eyewitness account of the incident was adequate for the factfinder to conclude, beyond a reasonable doubt, that Appellant was attempting to force his penis into the victim's vagina while he was naked on top her. Moreover, any difference between C.Q.'s testimony and M.R.'s goes to the weight of the evidence, not the sufficiency. Therefore, Appellant's argument in this regard is meritless.

implicates the legality of a defendant's sentence). In **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), our Supreme Court held that the registration requirements under SORNA constitute criminal punishment, thus overturning prior decisions deeming those registration requirements civil in nature. **Id.** at 1218. On October 31, 2017, this Court ruled that,

> since our Supreme Court has held [in **Muniz**] that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then under **Apprendi** [**v. New Jersey**, 530 U.S. 466 (2000),] and **Alleyne** [**v. United States**, 133 S.Ct. 2151, 2163 (2013)], a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses[,]" 42 Pa.C.S.[] § 9799.12, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder. Section 9799.24(e)(3) identifies the trial court as the finder of fact in all instances and specifies clear and convincing evidence as the burden of proof required to designate a convicted defendant as an SVP. Such a statutory scheme in the criminal context cannot withstand constitutional scrutiny.

**Butler**, No. 1225 WDA 2016, at *11. Accordingly, the **Butler** panel held that 42 Pa.C.S. § 9799.24(e)(3) is unconstitutional. **Id.** at *11-12.

In light of **Butler**, we are compelled to conclude that the portion of Appellant's sentencing order deeming him an SVP is illegal. **See id.** at *12. Accordingly, we vacate only that aspect of Appellant's judgment of sentence, and remand his case for the trial court to determine under what tier of SORNA Appellant must register, and to provide him with the appropriate notice of his registration obligations under 42 Pa.C.S. § 9799.23. **See id.** at *13.

SVP Order reversed. Judgment of sentence affirmed in all other respects. Case remanded. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *11/21/2017*



FILED

NOV 16 2016

Criminal Appeals Unit
First Judicial District of P

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA ) PHILADELPHIA COUNTY
                               ) COURT OF COMMON PLEAS
                               )
VS.                            )
                               ) NO. CP-51-CR-0013380-2013
                               ) NO. CP-51-CR-0013381-2013
HECTOR GONZALES                )
                               )

CP-51-CR-0013380-2013 Comm. v. Gonzales. Hector G.
Opinion

|||||||||||||||||||||||||||||||
7526451661

## OPINION

Appellant, Hector Gonzales, as the above-named Defendant, seeks review of the Order and Judgment of Sentence, imposed on July 31, 2015, by the Honorable Anne Marie B. Coyle, Judge of the First Judicial District Court of Common Pleas. The Appellant asserts within the combined Statements of Matters Complained of on Appeal Pursuant to Pa. R. P. 1925(b) filed in both above-captioned matters that:

1) in its imposition of consecutive sentences, the Trial Court did not properly consider the general sentencing guidelines provided by the legislature of Pennsylvania; (2) The Trial Court sentenced the Defendant based solely on the seriousness of the offenses and failed to considered all relevant factors; (3) The sentence imposed is not consistent with the gravity of the offense as it relates to the impact on the life of the victim and the community, as well as the Defendant's rehabilitative needs; (4) the sentence is manifestly excessive in that it is grossly proportionate to his crime, particularly in light of the facts surrounding the criminal episode and his background; (5) the judge failed to provide adequate reasons on the record for the sentence; (6) the verdict was against the weight of the evidence; (7) the evidence was insufficient as a matter of law to convict the Defendant of Criminal Attempt- Rape Forcible Compulsion; and (8) the Trial Court failed to sustain or overrule two objections.

PROCEDURAL HISTORY

The Defendant, Hector Gonzales was arrested and charged with Criminal Attempt- Rape Forcible Compulsion under 18 § 901 §§ A1, graded as a Felony of the First Degree; Unlawful Restraint- Serious Bodily Injury under 18 § 2902 §§ A1, graded as a Misdemeanor of the First Degree; Indecent Exposure under 18 § 3127 §§ A, graded as a Misdemeanor of the Second Degree; Recklessly Endangering Another Person under 18 § 2705, graded as a Misdemeanor of the Second Degree; Criminal Attempt- IDSI Forcible Compulsion under 18 § 901 §§ A, graded as a Felony of the First Degree; Criminal Attempt- Sexual Assault under 18 § 901 §§ A, graded as a Felony of the Second Degree; and Indecent Assault Forcible Compulsion under 18 § 3126 §§ A2, graded as a Misdemeanor of the Second Degree. The arrest stems from events that occurred in the city and county of Philadelphia on July 1, 2013 around 11:00 p.m., during which the Defendant sexually assaulted two women who were strangers to him, near a park area in the Kensington Section of Philadelphia. Following a preliminary hearing, the Bills of Information related to offenses involving the complainant victim M.R. ███████████ were listed after arraignment under CP#-51-CR-0013381-2013 and the Bills of Information related to the offenses related to the complainant ███ C.Q. ███████ were listed after arraignment under CP#-51-CR-0013380-2013.

On March 17, 2015, jury selection began before the Honorable Anne Marie B. Coyle Judge of the Court of Common Pleas for the First Judicial District. The case in chief presented by the Commonwealth of Pennsylvania, by and through its Assistant District Attorney Lindsay Kenney, began March 18, 2015 and was completed on March 19, 2015. The Trial Court entered the Order denying the Motion to Judgement of Acquittal orally filed on behalf of the Defendant, by and through his trial counsel Gina Capuano, on March 19, 2015.

2

After due deliberation, the jury verdicts of guilty were entered on March 19, 2015. The empaneled jury found the Defendant guilty of five criminal offenses: (1) Criminal Attempt- Rape Forcible Compulsion under 18 § 901 §§ A1; (2) Criminal Attempt- IDSI Forcible Compulsion under 18 § 901 §§ A; (3) Unlawful Restraint- Serious Bodily Injury under 18 § 2902 §§ A1; (4) Indecent Exposure under 18 § 3127 §§ A; and (5) Indecent Assault Forcible Compulsion under 18 § 3126 §§ A2.

As the presiding trial jurist, the Honorable Anne Marie B. Coyle, Judge of the Court of Common Pleas for the First Judicial District, directed the completion of Presentence Evaluations by the First Judicial District Probation and Parole Department, as well as a Mental Health Evaluation, and a Megan's Law Assessment. The Defendant retained new trial and appellate counsel, Nino Tinari, Esquire. On July 31, 2015, after review of all completed presentence reports and consideration of all relevant data submitted concerning the Defendant at a full and fair sentencing hearing, the Honorable Anne Marie B. Coyle imposed the following sentences:

Count 1- Criminal Attempt- Rape Forcible Compulsion (Victim- ▐▐▐▐▐▐▐▐▐) under 18 § 901 §§ A1: Minimum ten (10) years state term of confinement to Maximum twenty (20) years state term of confinement;

Count 2- Unlawful Restraint- Serious Bodily Injury (Victim- ▐▐▐▐▐▐▐▐) under 18 § 2902 §§ A1: Minimum one and one half (1.5) years state term of confinement to Maximum five (5) years state term of confinement to run concurrently to Count 1;

Count 3- Indecent Exposure (Victim- ▐▐▐▐▐▐▐▐) under 18 § 3127 §§ A: Minimum one (1) year state term of confinement to Maximum (2) years state term of confinement to run concurrently to Count 1;

Count 5- Criminal Attempt- IDSI Forcible Compulsion (Victim- ▐▐▐▐▐▐▐▐) under 18 § 901 §§ A: Minimum ten (10) years state term of confinement to Maximum twenty (20) years state term of confinement to run consecutively to Count 1;

Count 7- Indecent Assault Forcible Compulsion (Victim- ▐▐▐▐▐▐▐) under 18 § 3126 §§ A2: Minimum one (1) year state term of confinement to Maximum two (2) years state term of confinement to run consecutively to Counts 1 and 5.

3

The aggregate sentence imposed totaled a minimum of twenty one (21) years state term of confinement to a maximum of forty two (42) years state term of confinement. The Court also determined the Defendant was a Tier III, Sexually Violent Predator; directed the Defendant to comply with all Megan's Law requirements; ordered the Defendant to stay away from the victims; required Sex Offender Supervision; random drug screens and treatment; and ordered the Defendant avail himself of any vocation and education trainings offered during the term of confinement.

On August 4, 2015, counsel on behalf of the Defendant, filed a Post Sentence Motion. This Motion was denied on December 4, 2015. On December 4, 2015, the Defendant filed a timely Notice of Appeal to the Superior Court of Pennsylvania. On December 21, 2015, this Court ordered the Defendant to file a concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On January 12, 2016, counsel requested an extension of time, which was granted on the same day. This Court granted an extension for thirty (30) days. On February 11, 2016, a Statement of Errors Complained of on Appeal was filed on behalf of the Defendant.

## FACTUAL HISTORY

At trial, the Commonwealth of Pennsylvania established the Defendant, Hector Gonzales, initially accosted two females, C.Q. and M.R. who were strangers to him, as they walked through a park area near 3rd & Cumberland Streets in Philadelphia on July 1, 2013, around 11 p.m. Specifically, C.Q. testified that she received a phone call earlier from her friend M.R. asking to meet for a night out at a local pub. M.R. stopped at C.Q.'s house and waited downstairs. C.Q. further testified that she witnessed M.R. ingest two Xanax pills, which were prescribed to her. These two friends walked to a bar in the neighborhood, where they each drank a shot and a beer. When these two females later passed the bar, a male on a bike approached them along North Fourth Street. C.Q. unequivocally identified this male in the

4

courtroom as the Defendant Hector Gonzales. She explained that the Defendant kept following them as they walked through the park. He offered a cigarette, to which C.Q. quickly replied "no, and get away."

C.Q. testified the Defendant stated that he was "trying to have fun," and repeatedly suggested that he and they engage in a "threesome," and made repeated foul mouthed sexual requests. The Defendant ignored the women's entreaties to leave them alone and their clear statements that they were not interested in his crude sexual advances. C.Q. informed him that they were not interested in the attention of any males. The Defendant then became aggressive with her friend M.R., and began touching her on her hands and breast. (N.T. 03/18/2015, pp. 29-37).

The Defendant continued to badger both women, "talking dirty," and stating that he wanted to have a three-way orgy. The Defendant walked up to C.Q., grabbed her shoulder, felt her breast. She immediately pushed him away. C.Q. stated to him to leave M.R. alone because she was messed up because of the Xanax and alcohol. She clearly voiced to him that he should leave the area entirely and go to where the prostitutes were available. C.Q. started walking away, towards the bar, to alert her friends to help them. When C.Q. returned with her friends, she witnessed the Defendant, with his pants down, pounding on top of M.R. as she lay on the ground struggling and yelling to fend him off of her. C.Q. and her two friends "O" and "Black" started pulling the Defendant off of M.R.; the Defendant's underwear was down to his ankles. M.R. pants had been pulled down her legs and her underwear ripped. She was hysterical. (N.T. 03/18/2015, pp. 43-46).

M.R.'S testimony at trial strongly corroborated her friend's recollection of events that evening. M.R. testified that when C.Q. walked away to meet their friends, the

Defendant jumped on top of her and pulled to the ground in a park area. She testified that the Defendant pulled out his penis, and attempted to insert his penis in her mouth and tried to go in her pants. M.R. testified that she had a few drinks that night, as well as her prescribed Xanax, and had subsequent difficulties with her memory, but that those circumstances did not prohibit her from recalling material facts as she recalled events of that night.

M.R. also testified that the Defendant, while his hands were in her pants, ripped her underwear and pulled them down to her ankles. She clearly recalled flailing her arms to try to stop him and yelling. When her friends returned they pulled the Defendant off of her as she struggled on the ground. The Defendant ran down an alley way naked, with C.Q.'s friends in hot pursuit. When the Defendant entered a house, multiple people called police reporting a naked man running down the street being chased by a group of people and observing a naked man sitting on front steps of a home in the 2600 block of Orianna Street. (N.T. 03/18/2015, pp. 83-85).

Philadelphia Police Officer Jason Judge credibly testified to responding to a radio call that dispatched him to the area of 3rd and Cumberland Streets in Philadelphia. Upon arrival he was approached by two upset women who had excitedly reported that the Defendant approached them and attempted to sexually assault them after being rebuffed by his unwanted advances. They and other person directed the responding officers toward the 2600 block of Orianna Street as the path of the Defendant's flight.

Police Officer Judge testified that the complainant, M.R., told him that a male, who was a complete stranger to her sexually assaulted her by attempting to penetrate her vagina, and that she had tried to fight him. She told him that the male then attempted to place his penis in her mouth. Officer Judge further testified that M.R.'s clothes were disheveled, ripped and torn, and that she appeared to be visibly distraught. (N.T. 03/18/2015, pp. 130-136).

6

Philadelphia Police Officer Cyprian Scott, of the Philadelphia Police SWAT Team, testified that he and his team were called to a report of a male barricaded inside 2628 North Orianna Street, Philadelphia, PA., which was located a block and one-half from the reported sexual assault location. Officer Scott further testified that upon arriving at the house, he was informed the male inside had been chased by citizens after committing a sexual assault. The male inside, later identified as Héctor Gonzales, rebuffed requests by SWAT members to peaceably exit the property for three hours before the SWAT team made forcible entry into the property. Officer Scott stated that orders were given to break through the front door.

Once inside the residential property, officers cleared the first floor and heard the Defendant moving upstairs in a second floor bedroom. The Defendant yelled to the officers that he would he would come down the stairs as long as his dog was unharmed. Per direction, the Defendant placed the pit bull terrier into a second floor bedroom where he remained unharmed. The Defendant was finally subdued and arrested after positive identifications were made from the victims. (N.T. 03/18/2015, pp. 145-147).

DISCUSSION

In his Statement of Matters Complained of on Appeal, the Defendant asserts: (1) in its imposition of consecutive sentences, the Trial Court did not properly consider the general sentencing guidelines provided by the Pennsylvania State Legislature; (2) the Trial Court sentenced the Defendant based solely on the seriousness of the offenses and failed to consider all relevant factors; (3) The sentence imposed is not consistent with the gravity of the offense as it relates to the impact on the life of the victim and the community, as well as the Defendant's rehabilitative needs; and (4) the sentence is manifestly excessive in that it is grossly disproportionate to his crime, particularly in light of the facts surrounding the criminal episode and

7

his background. The Defendant also claims the Judge failed to provide adequate reasons on the record for the sentence.

Additionally, the Defendant claims that the guilty verdict was against the weight of the evidence, and that the evidence was insufficient as a matter of law to sustain a conviction for Criminal Attempt- Rape Forcible Compulsion (18 § 901 §§ A1), because the evidence was insufficient to prove the Defendant attempted to engage in sexual intercourse with a complainant. Lastly, the Defendant asserts that the Court failed to sustain two evidentiary objections. However these two claims lack any merit, were harmless error in light of the proceedings, and do not warrant any relief.

I.     Defendant's excessive sentence claim is not appealable without a more specific claim for the source of error.

The Defendant's claim that the imposed sentences were excessive fails to even raise a substantial question necessitating appellate review because no additional and more specific violation of the sentencing code was cited to support the argument. The Court's analysis begins with the established premise that appellate review of the discretionary aspects of sentencing is not automatic. *Com. v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. Ct. 2010). Only when a sentencing claim sets forth the manner in which either a particular provision of the Sentencing Code or an underlying fundamental norm of the sentencing process was violated, does a claim of excessiveness present a substantial question. *Com. v. Mouzon*, 812 A.2d 617, 627(Pa. 2002).

Therefore, only when there is a substantial question as to the sentence does a party have a right to appeal the court's determination. 42 Pa. Cons. Stat. Ann. § 9781 (West). If such a substantial question exists, the sentencing court is still given great deference during the appeal, and the sentence can only be overturned if there was an abuse of that discretion. *Com. v. Walls*, 926 A.2d 957, 961 (Pa. 2007). The sentencing court is given broad discretion to determine the

aspects of a sentence because it is in the best position to evaluate the facts in that individual circumstance. *Com. v. Mouzon*, 812 A.2d 617, 620 (Pa. 2002).

A blanket claim of excessiveness, with no further allegations, does not create a qualifying substantial question for appellate review. *Id.* For instance, the defendant in *Mouzon* claimed that he had been improperly denied an appeal based on the fact that his sentence, while large, was within the statutory limit. *Id.* at 624. While the Supreme Court remanded the case because it disagreed with the Superior Court's reasoning concerning the statutory limits, it specifically held that "bald allegations of excessiveness" are not sufficient to create a substantial question because they do not identify the manner in which a sentencing provision or fundamental norm were violated. *Id.* at 627; *See also Com. v. Titus*, 816 A.2d 251, 255-56 (Pa. Super. Ct. 2003) (explaining that the appeal in that case only presented issues as to whether the sentence was too harsh, which it considered a bald allegation that the sentence was excessive that did not create a substantial question that entitled the defendant to an appeal).

Moreover, a specific reason as to why an excessive sentence is improper, beyond it simply being excessive, is needed to raise a substantial question. *Com. v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. Ct. 2014) *appeal denied*, 105 A.3d 736 (Pa. 2014); *Com. v. Sheller*, 961 A.2d 187, 190 (Pa. Super. Ct. 2008). For instance, the defendant in *Raven* claimed that the sentencing court failed to consider pertinent mitigating factors when formulating his sentence. *Id.* at 1248. The Superior Court considered this additional and specific allegation to be sufficient to raise a substantial question and allowed the appeal to go forward. *Id.* at 1253; *See also Com. v. Riggs*, 63 A.3d 780, 786 (Pa. Super. Ct. 2012) (determining that the failure to consider the relevant sentencing factors laid out in section 9721 of the Pennsylvania Code (the need to protect the public, gravity of the crime, and the defendant's rehabilitative needs) presented a substantial question).

9

Similarly, in *Com. v. Sheller*, 961 A.2d 187, 190 (Pa. Super. Ct. 2008) the defendant claimed that the sentence was improper because it exceeded the recommended range without the sentencing court adequately stating its basis for the deviation. 961 A.2d at 189 (Pa. Super. Ct. 2008). The Superior Court considered this claim, which went beyond simply claiming the sentence was excessive, to be enough to raise a substantial question. *Id.* at 190; *See also Com. v. Kenner*, 784 A.2d 808, 811 (Pa. Super. Ct. 2001) (granting appeal for the appellant for an overly lenient sentence only after determining that a substantial question was raised by the sentencing court's issuing of a sentence thirty months below the recommended range without sufficient explanation).

In the instant case, no appeal is allowed because Defendant's combined claims are simply bald assertions based upon disagreement with the terms of the sentences imposed. In the Statement of Matters Complained of on Appeal, Defendant merely states that the sentence imposed was is manifestly excessive in that it is grossly disproportionate to his crime, and that the trial court failed to consider the general sentencing principles, failed to adequately examine the Defendant's background, character, and rehabilitative needs, and failed to place adequate reasons on the record for the sentence given. The Defendant makes no additional concrete claims about how the excessive sentence was a result of an error by the trial court.

Even if is determined that there was a substantial question raised by the Defendant's allegation that the trial court failed to consider certain sentencing factors, his argument does not meet the abuse of discretion standard of appellate review. In this case, this Court incorporated and specifically referenced its analysis of all the relevant and detailed sentencing data concerning the Defendant's background presented within the written and oral arguments proffered by all parties and including the Presentence Investigative Reports that the trial court had directed to be completed.

10

In addition, all parties and counsel agreed that this Court was required to impose a minimum of ten years of incarceration to the lead felonies pursuant to the statute as a "Second Strike" offense. This Court expressly considered the recommended ranges of sentences pursuant to the guidelines for sentencing and resentencing as adopted by the Pennsylvania Commission on Sentencing as it related to each individual charge. As the instant case involved a sexual assault of two females, a Megan's Law Assessment and corresponding evidentiary hearing were properly conducted. On the record, this Court specifically incorporated stated reasons for the sentences from the evidentiary hearing and provided reasonable supplemental factors on the record before imposing sentence.

The imposition of consecutive terms of sentence as opposed to concurrent terms of sentence is not viewed as raising a substantial question that would allow the granting of allowance of appeal in our Commonwealth. *Com. v. Marts*, 889 A.2d 608 (Pa. Super. 2005). Pursuant to 42 Pa. C.S.A. § 9781(d) (1) and (3), this Court was well within its discretionary right to impose the sentences consecutively. In the instant matter, this Court exercised reasonable discretion when it determined that sentences for three of the seven criminal offenses for which the jury rendered verdicts of guilt, should run consecutively. Individualized consecutive standard sentences upon the Defendant were imposed only after careful consideration of all relevant sentencing factors including the paramount need for protection of the public, the gravity of the offense, the Defendant's prospect for rehabilitation. Hence, the Defendant has not raised any substantial question that the consecutive sentences imposed were inappropriate or contrary to a fundamental norm underlying the sentencing code.

The weight given by the Court to the relevant sentencing factors does not present a substantial question because this simply raises a disagreement about this Court's determination of

11

facts and the weight of factors. Again, the sentencing court is given broad discretion in formulating a sentence, with no automatic right of review available. *Com. v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. Ct. 2010). An appeal can only be granted if there is a substantial question as to a violation of a specific sentencing code or a fundamental norm. 42 Pa. C.S.A. § 9781; *Mouzon*, 812 A.2d at 627.

In the instant case, the Defendant generally avers that this Court did not give enough weight to the "particular circumstances of the offense and the character of the defendant." Although a claim that a sentencing court failed to consider a mitigating circumstance be a substantial question, mere disagreement, however, about how factors are weighed does not create a substantial question, since it is the sentencing court's role to appraise the importance of the relevant facts. *Com. v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. Ct. 2014) *appeal denied*, 105 A.3d 736 (Pa. 2014); *Com. v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. Ct. 2014), *reargument denied* (Feb. 17, 2015).

The Defendant Hector Gonzalez does not pinpoint any particular mitigating circumstance as not being considered. As written, this blanket claim, in essence, amounts to his disagreement with the recorded findings of fact by this Court. Moreover, the record abundantly dispels any notion that this trial court did not thoroughly assess and identify all relevant mitigating and aggravating factors from ample evidence presented.

In reviewing the record, the appellate court shall have regard for: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; and ... (3) the findings upon which the sentence was based." 42 Pa. C.S.A. § 9781 (d) (1) and (3). At sentencing, the trial court was keenly concerned that previous attempts to rehabilitate the Defendant had failed. This was evidenced by recitation of facts contained within the Presentence Reports Investigative Reports prepared by the Adult Probation and Parole Department. (N.T. 07/31/2015, pp. 29-31).

The Court noted on the record that the Defendant absconded from a juvenile commitment facility, had multiple narcotics convictions, and multiple convictions for violation of the Uniform Firearms Act.

At the very beginning and at the end of the sentencing hearing, all parties agreed that Mandatory Minimum Sentences of ten years of confinement must be imposed to the lead offenses because the Defendant qualified per statute as Second Strike Offender. In addition, this Court amply addressed the guideline calculations presented within the Presentence Investigative Reports. Each attorney agreed with the computation of the Offense Gravity Scores for each offense and Prior Record Score as tabulated pursuant to the guideline recommendations derived from the Pennsylvania Commission on Sentencing. Indeed, each period of confinement imposed per charge fell squarely within the agreed upon recommended guideline sentencing ranges and statutory mandatory minimum requirements.

A reasonable sentence is one that includes examination of the public protection, the crime's gravity, and the defendant's rehabilitative needs, as listed in section 42 of the Pennsylvania Code. 42 Pa. Cons. Stat. Ann. § 9721 (West); *Walls*, 926 A.2d at 964. Additionally when the sentencing court has reviewed a presentence report, it is presumed that the court has considered the information it contains. *Com. v. Boyer*, 856 A.2d 149, 154 (Pa. Super. Ct. 2004) *aff'd* 891 A.2d 1265 (Pa. 2006). Facts can be considered, pursuant to § 9721(b)'s sentencing requirements, even if the facts are subsumed within the guideline recommendation. *Com. v. Sheller*, 961 A.2d 187, 192 (Pa. Super. Ct. 2008). This Court explicitly and implicitly touched upon all of the required considerations of 42 Pa. C.S.A. § 9721(b) when it considered the Defendant's background, current situation and the nature of the crimes he committed.

Within the outlined reasons for imposition of sentences, this Court explicitly incorporated the findings and conclusions presented by Dr. Barbara Ziv. Specifically, regarding the Megan's Law evidentiary hearing, the Court heard credible testimony from Dr. Barbara Ziv concerning the criteria used to classify someone as a sexually violent predator ("SVP") in Pennsylvania. Dr. Ziv testified that there are two prongs to the statute: (1) the issue of a mental abnormality or personality disorder that renders someone likely to reoffend; and (2) the issue of predatory behavior. Predatory behavior is an act directed at a stranger or person with whom a relationship had been initiated or established, in order to promote or support victimization. Additionally, Dr. Ziv testified that to classify an individual as SVP, characteristics of both the offender and victim are addressed. Dr. Ziv concluded that the Defendant met both prongs for the criteria of SVP. (N.T. 07/31/2015, pp. 8-15).

Dr. Ziv also testified that, in her expert opinion, Mr. Gonzales meets the criteria for Antisocial Personality Disorder. She explained that it constitutes deviant sexual behavior to become aroused or interested by a stranger in a violent act. Mr. Gonzales displayed a pattern of disregard for and violation of the rights of others. This pattern of behavior was firmly established within the Defendant's reported criminal history that Dr. Ziv had reviewed. As an adult, Hector Gonzales had accumulated fourteen (14) adult criminal arrests, resulting in multiple convictions for serious offenses and three juvenile arrests in which he was adjudicated delinquent twice. Dr. Ziv noted the impulsivity ingredient present for many of Mr. Gonzales's crimes. Additionally, the irritability and aggressive nature of crimes committed, and reckless disregard for the safety of self and others was also highlighted.

Lastly, Dr. Ziv testified to how Mr. Gonzales met the predatory behavior prong of the statute. She cited the fact that the two women were strangers; Mr. Gonzales did not seem to

14

previously plan the attack;, and when the women refused him, he became aggressive in a sexual nature. It was also remarked that, although Mr. Gonzales declined to be interviewed, Dr. Ziv had sufficient information to provide her conclusions. *Id.* This Court expressly stated its agreement with Dr. Ziv's findings and conclusions when determining that Mr. Gonzalez met the criteria of a Sexually Violent Predator as identified in the statute.

On the record this Court specified that it reviewed all relevant data sources supporting its decision and recited specific reasons for each finding as follows:

> "...Factor No. 1, Whether or not the offense involved multiple victims: it did. It was all in one day and it was a very long day for both of those victims who were both strangers to this Defendant and clearly demonstrated to any reasonable human being they had no interest in Mr. Gonzalez.

> No. 2: Whether or not this individual exceeded the means necessary to achieve the offense: I find that he specifically exceeded the means necessary to achieve this offense in the manner in which he restrained and assaulted ███████ M.R. after he groped the other young lady and was violent. The relationship to the individuals-to the victims-they were strangers to him. The ages of the victims were 28 and 30 years old.

> Factor No. 6: Whether or not this offense displayed an unusual amount of cruelty by the Defendant during the commission of his crime: I note his extreme cruelty to ███████ and I remember her because she was someone who was of very limited ability both physically and mentally.

> Mental capacities of the victim-actually while its not noted in the assessment, I did have the opportunity to observe both victims and of the two, ██ M.R. ████ had considerable deficits that were easily observable to Mr. Gonzalez.

> The other young lady-whose name escapes me for the moment, I'll come back to that- had a lot more strength to her, and indeed is the reason why this offense ended, because she enlisted help." (N.T. July 31, 2015 Pgs. 28-31.)

In addition, this Court incorporated its thorough review of the relevant data contained within the Pre-Sentence Reports and Mental Health Assessments. This Court referenced the Defendant's documented addiction to multiple illegal narcotic substances, including heroin and

15

marijuana beginning the age of fifteen years old. This Court also remarked that multiple failed efforts to rehabilitate the Defendant following the two adjudications of delinquency. This Court also noted that in 1991, the Defendant had been formerly committed by a Court into the Don Guanella Juvenile Program to address his addictions and delinquency causes and that he absconded from the program after a short stay of only thirty (30) days. His immediate family reported that the Defendant as a juvenile could not be controlled. As a result of his historical non-compliance one of his later juvenile arrests resulted in adult certification.

Overall, this Court was cognizant of the fact that the Defendant's poor adjustment to supervision as a juvenile continued through adulthood. As an adult, he accumulated fourteen arrests resulting in eight convictions with five commitments for serious offenses including Robbery, Carrying A Firearm, Delivery of Controlled Substances. He had violated previously imposed terms under parole or probationary periods of supervision. He hampered efforts of evaluators to understand him. For instance, the Defendant abruptly terminated the interview conducted by the Pre-Sentence Investigator "after realizing that this investigator was unable to provide him with specific information regarding his sentencing." (See Excerpt Page 2 of the Pre-Sentence Report)

This Court reasonably concluded that the Defendant, who was thirty-nine years of age, demonstrated a high likelihood or reoffending and a high rate of sexual recidivism and incorporated this finding within the multiple reasons for the imposing the sentences. This Court formally supplemented its detailed findings with its review of the underlying circumstances from the Defendant's prior conviction for Robbery which had formed the basis for imposition of the mandatory minimum ten year sentence on the record as follows:

16

"... Mr. Gonzalez, at this point in time, sir, I do incorporate all the findings that I previously stated in reference to the Megan's Law Assessment into the consideration of my sentence.

I've reviewed all the information provided thus far. I've also reviewed the guidelines in this matter, as well as the fact that this is a second strike. I supplement my findings because I noted that with respect to the first strike, sir, the robbery, that was also of a woman; a 40-year old woman whose unfortunate position was to be seated in her parked vehicle. She was greeted by you producing a firearm and threatening to "Get off my fucking arm or I'll blow your brains out." You were convicted after a waiver trial on May 23, 2000 for that offense.

So I have a great deal of concern about you and your future and the future of the folks in Philadelphia when you are released because I do find that your risk of recidivism is extremely high." (See N.T. July 31, 2015 Pages 42-43.)

In short, this trial court thoroughly investigated and succinctly referenced all relevant sentencing factors before entering the Order of Sentence. No abuse of discretion occurred.

## II.     The verdict was not against the weight of the evidence present at trial.

The Defendant next summarily contends that the "jury verdict was against the weight of the evidence" at trial. The Defendant does not specify which verdict at to which charge was claimed to be insufficiently supported.

The Supreme Court has set forth the following standard of review for weight of the evidence claims:

> "The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion."

*Com. v. Roberts*, 2016 Pa. Super 22, 133 A.3d 759, 770 (2016). A motion for a new trial based on a claim that the verdict is against the weight of the evidence is discretionally determined by the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the

17

trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Id.*

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Commonwealth v. Clay,* 619 Pa. 423, 64 A.3d 1049, 1054–55 (2013) (citations and quotation omitted). In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan,* 820 A.2d 795, 806 (Pa. Super.2003) (citation omitted).

In the instant case, the record clearly supports a conviction for all charges including the offense of Attempted Rape. As previously stated, the Defendant stalked and sexually harassed two women who were strangers to him as they walked through a park at night. After repeated requests by the women for the Defendant to leave them alone, as well as both women refusing to participate in a three-way orgy in public, the Defendant indecently assaulted C.Q. ████████ and then violently attacked M.K. ████████████.

M.R. ████████ credibly testified that after her friend went across the street to the bar to get help, Defendant suddenly jumped on top of her and dragged her onto the ground into a nearby dark park area, pulled her clothes down to her ankles as he forcibly kept her pinned on the ground and ripped her underwear, attempted to insert his penis into her mouth and bottom. C.Q. ████████ testified that when she returned with aid, she saw the Defendant on top of her friend with his pants down while her friend was yelling and vainly trying to get him off of her. She observed M.R.'s ████████ ripped and disarrayed clothing and that M.R. ████████ was hysterical. She stated that it took

18

multiple persons to get him off of her friend who was and remains a plainly observably disabled diminutive person.

The victims' credible testimony was also corroborated by responding uniformed Philadelphia Police Officers who testified that the two distraught women immediately reported what had happened, and provided the direction of Defendant's flight. Officers noted that both women were highly emotional and that M.R. appeared quite disheveled. The Defendant's response by ignoring the efforts and commands of police officers within the three hour standoff with the SWAT unit uniquely reflected his consciousness of guilt. The overall evidence introduced in this instant matter was far from tenuous, vague or uncertain that the verdict shocked the conscious of the court. To the contrary, the evidence was sufficiently compelling to support each verdict of guilty for each charge.

III. **The evidence presented at trial was sufficient to prove beyond a reasonable doubt that the Defendant, Hector Gonzales, attempted to engage in sexual intercourse with the complainant.**

The Defendant also contends that the evidence at trial was insufficient as a matter of law to sustain a conviction of Criminal Attempt- Rape Forcible Compulsion (18 § 901 §§ A), because the evidence was insufficient to prove that the Defendant attempted to engage "in sexual intercourse with a complainant." 18 § 3121 §§ A. In reviewing the sufficiency of evidence, an appellate court considers "whether the evidence presented at trial was sufficient to establish all elements of the crime beyond a reasonable doubt." *Commonwealth v. Burton*, 2 A.3d 598 (Pa. Super. Ct. 2010). The appellate court views all of the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as verdict winner. *Id.* Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. *Id.* The evidence

19

established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Feliciano*, 2013 Pa. Super 117, 67 A.3d 19 *quoting Commonwealth v. Stokes*, 2011 Pa. Super 261, 38 A.3d 846, 853-854 (2011) (internal citations and quotations omitted).

In defining the crime of rape, 18 Pa. C.S.A. 3121 provides: "a person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse: (1) by forcible compulsion; (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution. Criminal attempt is defined by 18 Pa. C.S.A. 901(a): "a person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of the crime." *Commonwealth v. Russell*, 313 Pa. Super. 534, 542, 460 A.2d 316, 320 (1983).

In the instant case, the Defendant jumped on top of the victim, pulled his pants down, and ripped her underwear down to her ankles. He further fondled her breast, and attempted to insert his penis into her mouth and vagina. The Defendant was only stopped when the victim's friends began pulling him physically pulling him off of her. "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." *Commonwealth v. Gilliam*, 273 Pa. Super. at 589–90, 417 A.2d at 1205 (1980). Additionally, intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances. *Commonwealth v. Gregory*, 267 Pa. Super. 103, 406 A.2d 539 (1979). The supporting facts as listed in the above paragraphs amply establish the Defendant's intent to commit rape. Fortunately his malicious intent and committed efforts were thwarted by spirited Samaritans. The Defendant's claims fail to state any basis for relief.

IV.     The claims regarding the trial court's response to two individually raised objections at trial even as alleged did not present any harmful error.

The Defendant contends that: "After an evidentiary objection by the Defendant, the Trial Court failed to sustain or overrule the objection, stating to the witness on the stand, "Just tell us what you remember seeing." See Notes of Testimony, March 18, 2015 at 34." The referred transcribed notes of testimony reflect that the witness who had been speaking was ▆▆▆▆▆ C.Q., who was providing a lengthy emotionally charged and rapidly spoken recitation of all events during direct examination. Towards the end of this block of this testimony ▆▆▆▆▆ C.Q. stated:

> "...He had the bike. That's when I seen my friends "O" and Black. I told them to come. I was telling them because they were asking what's going on. I was telling them there's this guy who's talking nasty to us and he just don't want to go. They came over there. As I walking, I seen him in the back on top of ▆▆▆ with his shorts on the floor, his underwear was down to his ankles, and I seen her trying to push of him off. And I don't' know what she was saying, but I know it was something, like, probably telling him to get off of her."

The transcribed testimony then reflects an objection attributed to the prosecutor. Even assuming the objection actually was raised by the defense, the Court's response to the objection was fair. In an abundance of caution since it was unclear as to whether her last comment was a combined deduction of what she had perceived or an opinion of what she was perceiving, this Court interrupted ▆▆▆▆▆ C.Q. and correctly redirected this upset lay witness her by instructing her to "Just tell us what you remember seeing. Afterward, ▆▆▆▆▆ C.Q. clarified her testimony by confining herself to relating her observations.

▆▆▆▆▆ C.Q. continued giving her direct testimony uninterrupted until she stated as follows:

> "... He was trying to get into a house. I didn't know he lived there. He was trying to kick the door and couldn't get in. Then he went through the alley way. So I guess then he went through the back, and I kept telling them to call the cop. We was waiting outside in front of his house for the cops. They made it and they came. That's when they found him in the house. Then they was asking if she wanted to press charges, and I told her, yes, do it. I been in situations like this, and we need

to keep these people off the street, because anything could happen to a kid or a little girl." (See N.T. March 18, 2015, page 34.)

At this point, the Defense raised an objection. Because ███████ C.Q. was simply providing her motivation for encouraging ███████ M.P. to press charges, this Court redirected her once again by stating. "All right. OK. Go ahead." (See N.T. March 18, 2015, page 36.) Subsequently, upon further examination she clarified the reasons for her statements and impressions. Her comment was not prejudicial. No harmful error occurred necessitating the extreme measure of granting a new trial.

CONCLUSION

In reviewing the entire record, this Court finds no harmful, prejudicial, or reversible error. Accordingly, the judgment of the trial court should be affirmed.

By the Court,

DATE: 11/16/16

Anne Marie B. Coyle, J.

22